# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JORGE ANIBAL P. P., | Case No. 26-cv-3125 (LMP/LIB) |
| Petitioner, | |
| v. | **ORDER GRANTING HABEAS PETITION** |
| TODD BLANCHE, *Acting Attorney General, United States Department of Justice*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; and DAVID J. VENTURELLA, *Acting Director of Immigration and Customs Enforcement*, | |
| Respondents. | |

Frances Ivy Mahoney-Mosedale, **Gustafson Gluek PLLC, Minneapolis, MN**, for Petitioner.

Worthington Phillips, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Jorge Anibal P. P.[1] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention. For the following reasons, the petition is granted, and the Court orders Jorge's release from detention.

## BACKGROUND

Jorge is a native and citizen of Ecuador who entered the United States in August 2021, when he was apprehended by U.S. Border Patrol officers. ECF No. 6-4 at 3. Jorge

---

[1] The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

was paroled into the United States, and on April 19, 2022, Immigration and Customs Enforcement ("ICE") issued Jorge a Notice to Appear for removal proceedings in immigration court. *Id.* On April 20, 2026, an immigration judge ordered Jorge removed to Ecuador. ECF No. 6-2. Jorge did not appeal the immigration judge's removal order by the May 20, 2026 deadline. ECF No. 6 ¶ 7; *see* ECF No. 6-2 at 4.

On June 25, 2026, ICE agents were parked outside of the Pennington County Law Enforcement Center in Thief River Falls, Minnesota, to conduct a targeted enforcement action on another individual. ECF No. 6-4 at 2. The agents observed several workers climbing down a ladder from the roof of the Law Enforcement Center and "huddl[ing] together down the alley" from the agents. *Id.* The workers then "rapidly climbed back up the ladder to the roof of the Law Enforcement Center and pulled their ladder up onto the roof with them," which the ICE agents found suspicious. *Id.* An ICE agent located what appeared to be the workers' van, and a records check revealed that the registered owner of the van had been ordered removed to Ecuador. *Id.*

Agents then saw several individuals on the roof of the Law Enforcement Center attempting "to conceal themselves while looking over the edge of the roof." *Id.* at 3. After receiving permission from local authorities, ICE agents accessed the roof of the Law Enforcement Center, where agents encountered several individuals, including Jorge. *Id.* One of the ICE agents then spoke with Jorge, who stated that he was from Ecuador and did not have legal status to remain in the United States. *Id.* At that point, Jorge was taken into ICE custody. *Id.* After his arrest, Jorge was served with an I-200 administrative warrant

for his arrest.  *Id.*  Jorge remains detained at the Kandiyohi County Jail in Willmar, Minnesota.  ECF No. 1 ¶ 4.

On June 29, 2026, Jorge filed the instant habeas petition.  ECF No. 1.  Jorge first argues that his detention violates his due process rights.  *Id.* ¶¶ 30–45.  Jorge also claims that he is entitled to immediate release because ICE agents violated federal law regarding warrantless immigration arrests.  *Id.* ¶¶ 46–53.  Jorge alternatively requests a bond redetermination hearing.  *Id.* at 14.

The Court ordered the Government to respond to the petition no later than July 6, 2026, with any reply from Jorge due by July 9, 2026.  ECF No. 4.  The Government provided timely responsive briefing.  ECF No. 5.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)).  The protections of habeas corpus extend to those in immigration detention.  *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Jorge asserts that he is entitled to immediate release because ICE officers violated federal law regarding warrantless immigration arrests.  ECF No. 1 ¶ 79.  "As a general rule, it is not a crime for a removable alien to remain present in the United States," so police may not arrest someone "based on nothing more than possible removability."  *Arizona v. United States*, 567 U.S. 387, 407 (2012).  Instead, the "federal statutory structure instructs

3

when it is appropriate to arrest an alien during the removal process." *Id.* Generally, the arrest of a noncitizen by immigration officials must be conducted pursuant to a warrant. *Id.* at 407–08. There are two primary types of warrants for immigration arrests: I-200 warrants (Warrant of Arrest) and I-205 warrants (Warrant of Removal/Deportation). *See Ger V. v. Mullin*, No. 26-cv-2543 (KMM/DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026). I-200 warrants are used "to detain noncitizens suspected of violating immigration law," *id.*, and can be issued "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed," 8 C.F.R. § 236.1(b)(1). I-205 warrants "are used to detain those already subject to a final order of removal." *Ger V.*, 2026 WL 1847044, at *2 (citing 8 C.F.R. §§ 241.2, 241.3(a)).

If "no federal warrant has been issued, [ICE] officers have more limited authority," *Arizona*, 567 U.S. at 408, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest," 8 U.S.C. § 1357(a)(2). The language "reason to believe" in 8 U.S.C. § 1357(a)(2) "means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

The Government first suggests that Jorge's arrest was conducted pursuant to a warrant. ECF No. 5 at 7. That's clearly wrong for two reasons. First, the record reflects that the I-200 warrant was not issued until after Jorge "was taken into ICE custody" and "secured and in a safe location." ECF No. 6-4 at 3. "Without an administrative warrant in hand at the time of [Jorge's] arrest, the arrest must be judged by the warrantless-arrest framework of 8 U.S.C. § 1357(a)(2)." *Felix Alberto J. M. v. Blanche*, No. 26-cv-2944

4

(LMP/DLM), 2026 WL 1906596, at *1 (D. Minn. July 2, 2026).   Second, and more fundamentally, ICE issued the wrong warrant: an I-200 warrant can be issued only "up to the time removal proceedings are completed."  8 C.F.R. § 236.1(b)(1).  But Jorge's removal proceedings were completed by May 20, 2026, when his removal order became final.  ECF No. 6-2 at 4; *see* 8 C.F.R. § 1241.1(c) (explaining that a removal order becomes final upon "expiration of the time allotted for an appeal if the [noncitizen] does not file an appeal within that time").   Jorge was arrested more than a month later.   ECF No. 6-4 at 2. Accordingly, Jorge could not "be arrested pursuant to an I-200 warrant because he is subject to a final order of removal."  *Ger V.*, 2026 WL 1847044, at *2.  Instead, ICE agents would have needed to procure a "validly issued I-205," which they concededly did not do. *Id.*

So, this case falls in warrantless-arrest land.  Recall that ICE may arrest a noncitizen without a warrant only when an officer has "reason to believe" both that a noncitizen is in violation of the immigration laws and "is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2).  The Court agrees with the Government that ICE agents had reason to believe that Jorge was in violation of the immigration laws at the time of his arrest, based on Jorge's voluntary statement during an apparent investigatory stop that he did not have lawful immigration status.  ECF No. 6-4 at 3.  The Government, however, falls short in demonstrating that Jorge was likely to escape before a warrant could be issued.

The Government contends that Jorge was "likely to escape before a warrant can be obtained" because he was stopped "when effectively trying to hide from ICE" on the roof

of the Law Enforcement Center.  ECF No. 5 at 7–8.  But as this Court has explained before, the Government's argument misconstrues the legal meaning of the phrase "likely to escape" in 8 U.S.C. § 1357(a)(2).  *See Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026).  Rather, courts have construed that phrase to mean "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016)); *see also Jesus F. D. v. Mullin*, No. 26-cv-2486 (PJS/DTS), ECF No. 10 at 8 (D. Minn. June 10, 2026) (interpreting "likely to escape" to mean "risk of flight"); *Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (interpreting "likely to escape" as likely to "disappear before a warrant could be obtained"); *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004).

And that analysis considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at "another clearly identifiable location."  *Escobar Molina v. U.S. Dep't of Homeland Sec.*, Civil Action No. 25-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026); *see United States v. Bautista-Ramos*, No. 18-cr-4066-LTS, 2018 WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018) (considering whether immigration officers "would have had trouble finding [arrestee] again if they had released him while they obtained a warrant"), *report and recommendation adopted*, 2018 WL 5723948 (N.D. Iowa Nov. 1, 2018).  Recent guidance from ICE accords with this definition: a January 2026 memorandum from former ICE Acting Director Todd Lyons interpreted the "plain meaning" of the phrase "likely to escape" in 8 U.S.C.

6

§ 1357(a)(2) as likely "to be located at the scene of the encounter *or another clearly identifiable location once an administrative warrant is obtained*."[2]

Accordingly, the relevant inquiry is not simply whether Jorge was likely to leave the Law Enforcement Center before ICE agents could obtain a warrant, but rather whether it was likely that ICE agents would be able to locate Jorge after obtaining a warrant to arrest him.[3] *See Bautista-Ramos*, 2018 WL 5726236, at *7; *Escobar Molina*, 2026 WL 1256234, at *10.

Here, ICE agents seemed to consider only one part of 18 U.S.C. § 1357(a)(2)'s temporal requirement—risk of flight at the scene of the encounter. But as to the second temporal requirement—risk of flight after the time agents could have obtained a warrant— ICE agents plainly could have located Jorge at a clearly identifiable location: his home address. Jorge's home address at the time of his arrest was the same as when he was ordered removed to Ecuador in April 2026. *Compare* ECF No. 6-2 at 3, *with* ECF No. 6-4 at 1. ICE therefore knew at the time of Jorge's arrest where he lived, which undermines any claim that agents would have "trouble finding [him] again if they had released him while they obtained a warrant." *Bautista-Ramos*, 2018 WL 5726236, at *7 (holding as much

---

[2]    This memorandum can be found at *Hussen v. Noem*, No. 26-cv-324 (ECT/ECW), ECF No. 85-1 (D. Minn. filed Jan. 30, 2026).

[3]    Even if the relevant inquiry was whether Jorge would escape from the Law Enforcement Center before ICE agents could obtain a warrant, the Government would likely still fall short. As the Government tells it, Jorge had pulled up the ladder he was using—his means of getting off the Law Enforcement Center's roof—and was hiding on the roof trying to avoid detection by ICE officers. ECF No. 6-4 at 2–3. The Court is at a loss to understand how a man effectively stranded on a rooftop could nevertheless be deemed "likely to escape."

when ICE knew the noncitizen's name, place of employment, and had "leads on his address"); *see Juan J. M. E. v. Easterwood*, No. 26-cv-2270 (KMM/EMB), 2026 WL 1746672, at *3 (D. Minn. June 8, 2026) (finding that warrantless arrest was unlawful because ICE agents "could have released [the noncitizen], confirmed his immigration status, and then obtained a warrant before re-arresting him at his now-known home or work addresses"), *report and recommendation adopted*, 2026 WL 1747756 (D. Minn. June 17, 2026).   Indeed, ICE could have issued an I-205 warrant any time after Jorge's removal order became final in May 2026.  *See* 8 C.F.R. § 241.2(a).  And because ICE knew Jorge's address, it could have easily arrested him at his residence on a warrant.  It did not do so. Instead, ICE agents chose to effectuate a warrantless arrest, which requires probable cause to believe that Jorge would have gone "off the grid" after his interaction with ICE agents in Thief River Falls.  *Walther Ademir A. S.*, 2026 WL 1734906, at *4.  Based on this record, ICE agents did not have that probable cause at the time of Jorge's arrest.

That conclusion becomes even stronger when considering Jorge's ties to the community.  Courts have made the "self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 31, (D.D.C. 2025) (collecting cases involving noncitizens with jobs, property, and families in the United States).  Jorge lived in Minneapolis with his daughter, worked as a roofer, and has no criminal history in the United States.  ECF No. 1 ¶ 2; ECF No. 6-4 at 3– 4.  Of course, officers at the scene knew none of this because they did not ask.  Yet the fact that officers "asked no questions—until after [Jorge's] arrest[]—bearing on flight risk,

8

including about plaintiff[']s famil[y], employment, or other community ties" undermines the Government's claim that the ICE officers on the scene had reason to believe that Jorge would evade detention before a warrant could be issued. *Ramirez Ovando*, 810 F. Supp. 3d at 1231. Indeed, it is ICE's burden to make a "particularized assessment" into whether the noncitizen is likely to evade detention. *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017). Had ICE officers learned about Jorge's community ties, fixed address, and lack of criminal history, they would have learned that they were unlikely to have "trouble finding [him] again if they had released him while they obtained a warrant." *Bautista-Ramos*, 2018 WL 5726236, at \*7; *see United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (finding no likelihood of escape when noncitizen had a stable job, lived with his fiancé, and helped pay her rent and raise her two children); *Khan*, 324 F. Supp. 2d at 1187 (same conclusion when noncitizen worked two jobs, owned a vehicle, paid rent, and never experienced legal trouble before his immigration arrest).

In sum, the Government did not have probable cause to conclude that Jorge was "likely to escape" when they arrested him without a warrant. When immigration officers conduct a warrantless arrest in violation of 8 U.S.C. § 1357(a)(2), this Court has ordered release as a remedy. *See Walther Ademir A. S.*, 2026 WL 1734906, at \*4. The Court will do the same here.[4]

---

[4] Because the Court grants Jorge release from custody on statutory grounds, the Court need not address Jorge's constitutional arguments.

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Jorge's Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED**;

2.  The Government is **ORDERED** to release Jorge from custody without conditions and with all personal property by no later than 5:00 p.m. on **Tuesday, July 14, 2026**;

3.  The Government is **ORDERED** to file a status report certifying its compliance with this Order by no later than **Wednesday, July 15, 2026**; and

4.  If the Government seeks to impose conditions of release on Jorge or to retain Jorge's property, the Government's status report must include: (a) the conditions imposed or the property retained; and (b) the legal basis on which the conditions are imposed or the property is retained.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 13, 2026

*s/Laura M. Provinzino*

Laura M. Provinzino
United States District Judge